SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR KING COUNTY

| | |
|---|---|
| LINDEN GUINN, | NO. |
| Plaintiff, | COMPLAINT |
| v. | |
| LIVE NATION WORLDWIDE, INC., a foreign corporation; PARKWOOD ENTERTAINMENT, LLC, a foreign corporation; FIRST & GOAL, INC., a Washington for profit corporation, UNKNOWN CORPORATION XYZ, | |
| Defendants. | |

Plaintiff Linden Guinn alleges the following:

## I.     PARTIES

1.     Plaintiff Mr. Guinn is a resident of Dallas, Texas.

2.     Defendant Live Nation Worldwide, Inc. is a foreign corporation doing business in King County, Washington.

3.     Defendant Parkwood Entertainment, LLC is a foreign corporation doing business in King County, Washington.

4.     Defendant First & Goal, Inc. is a Washington for profit corporation doing business in King County, Washington.

COMPLAINT - 1 of 6
[4898-4905-3498]

5. Defendant Unknown Corporation XYZ is a potential foreign or Washington corporation doing business in King County, Washington and exercising control over Lumen Field in Seattle, Washington.

## II.    BACKGROUND

6. On September 14, 2023, Mr. Guinn attended musical artist Beyoncé's 2023 Renaissance World Tour concert (the "Concert") with his wife at Lumen Field stadium in Seattle, Washington.

7. Defendant First & Goal, Inc. operates Lumen Field, the venue for the Concert.

8. Construction of Lumen Field was completed in 2002.

9. Upon information and belief, Defendant Live Nation Worldwide, Inc. entered into a contractual agreement with First & Goal, Inc. to put on the Concert at Lumen Field and/or exercised control over Lumen Field at the time of the incident at issue in this lawsuit.

10. Upon information and belief, Defendant Parkwood Entertainment LLC entered into a contractual agreement with First & Goal, Inc. to put on the Concert at Lumen Field and/or exercised control over Lumen Field at the time of the incident at issue in this lawsuit..

11. All Defendants exercised control over Lumen Field before, during, and after the Concert.

12. During the concert, Mr. Guinn left his seat, located at section CLB209, Row C, Seat 16 of the Lumen Field stadium to use the men's restroom.

13. On his return to his seat, he walked down the stairs located in between Club Sections 209 and 210.

COMPLAINT - 2 of 6
[4898-4905-3498]

14.     The incident occurred just before the handrails appearing in the middle of the stairs where the aisles on either side begin. As the handrails located to both sides of the stairs end, there is a step with a yellow marking stripe. There is a subsequent step that does not have a yellow marking stripe. The next two steps, where the handrail in the middle of the stairs begin, do have yellow marking stripes. Below is a photograph of the location near or about where the incident occurred:



15.     As Mr. Guinn was walking down the stairs, the stadium lights were turned off as part of the performance.

16.     Mr. Guinn fell while navigating the second step that lacks a yellow marking stripe and was seriously injured.

17.     Mr. Guinn was unaware and did not discover the unusual and unsafe design of the stairs until after he fell.

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON  98402
(253) 620-6500  -  FACSIMILE (253) 620-6565

18.     Due to the nature and degree of his injury, as a result of his fall, Mr. Guinn was transported via ambulance to the Emergency Room of Virginia Mason Medical Center in Seattle, Washington.

19.     Emergency Room imaging confirmed that Mr. Guinn suffered injuries to his body, including bilateral patellar tendon ruptures as a result of the fall, requiring surgery and other medical treatment, including future medical treatment.

20.     Mr. Guinn has suffered permanent injuries as a result of the incident.

### III.     FIRST CAUSE OF ACTION: NEGLIGENCE

21.     The nature of Defendants' business and its methods of operation are such that the existence of the unsafe condition on its premises was reasonably foreseeable. See *Galassi v. Lowe's Home Centers, LLC*, 565 P.3d 116 (Washington Supreme Court Slip Opinion, March 13, 2025).

22.     Defendants had a duty of care to reasonably protect the safety of their customers as legal invitees, or to warn customers of any dangers present of the property of which Defendants had actual or constructive knowledge of dangers it created or acquiesced to.

23.     Defendants had a duty to inspect and maintain the property to ensure the safety of their customers and compliance with the applicable codes, including, but not limited to, State of Washington and International building codes.

24.     Specifically, the International Building Code – IBC 1996, 1019.8.2.3; IBC 2000, 1008.9.3; and Seattle Fire Code 22.600.020, International Fire Code BE 1029.14.2.3 state "a contrasting marking stripe shall be provided on each tread at the nosing or leading edge such that the location of each tread is readily apparent when viewed

COMPLAINT - 4 of 6
[4898-4905-3498]

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON  98402
(253) 620-6500  -  FACSIMILE (253) 620-6565

in descent. Such stripe shall be a minimum of 1 inch (25.4 mm) wide and a maximum of 2 inches (51 mm) wide."

25.     The National Fire Protection Association – NFPA 101 2020, 13.2.5.6.10.1 - .2 state that, with regarding to aisle marking, "A contrasting marking stripe shall be provided on each tread at the nosing or leading edge so that the location of such tread is readily apparent, particularly when viewed in descent."; and "The marking stripe shall be not less than 1 in. (25 mm) wide and shall not exceed 2 in. (51 mm) in width." Aisle stair is defined in 3.3.275 and states, "A stair within a seating area of an assembly occupancy that directly serves rows of seats to the side of the stair, including transition stairs that connect to an aisle or a landing."

26.     The American National Standards Institute, A117.1-2009 states, "the leading 2 inches of the tread shall have visual contract of dark on light or light on dark from the remainder of the tread."

27.     Defendants had a duty to but did not comply with any of the requirements set forth above at the time of Mr. Guinn's fall.

28.     Defendants had also had a duty to remedy known dangerous conditions on their property.

29.     Defendants breached their duties as a result of their negligent actions and/or inactions.

30.     As a direct and proximate result of Defendants' breach of their duties, Mr. Guinn was permanently injured.

31.     Defendants' wrongful actions are the proximate cause of Mr. Guinn's damages, including past and future medical bills, wage loss, pain and suffering, disability,

COMPLAINT - 5 of 6
[4898-4905-3498]

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON  98402
(253) 620-6500  -  FACSIMILE (253) 620-6565

disfigurement, loss of enjoyment of life, anxiety, emotional distress, and other damages to be proven at trial.

32.     Mr. Guinn has suffered, and will continue to suffer, economic and emotional harm as a result of Defendants' wrongful actions.

33.     Defendants are jointly and severally responsible for Mr. Guinn's damages.

WHEREFORE PLAINTIFF PRAYS FOR THE FOLLOWING RELIEF:

1.     That judgment be entered in Plaintiff's favor compensating Plaintiff for his injuries and damages, both economic and non-economic;

2.     That the judgment includes attorney fees and costs;

3.     For prejudgment interest on all liquidated damages; and

4.     For such other relief as may be just and equitable.


Dated this 9th day of May, 2025.

GORDON THOMAS HONEYWELL LLP


By _____
      Robert C. Wilke, WSBA No. 49937
      rwilke@gth-law.com
      Ian M. Leifer, WSBA No. 56670
      ileifer@gth-law.com
      Attorneys for Plaintiff

COMPLAINT - 6 of 6
[4898-4905-3498]